UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GBUREK, an individual, and
JOANNE GBUREK, an individual,

      Plaintiffs,                                           Case No.

v.                                                       Hon.

REGAL ASSETS LLC, a California
limited liability company,

      Defendant.
_____

PAESANO AKKASHIAN, PC
Brian M. Akkashian (P55544)
Devin W. Bone (P78853)
7457 Franklin Road, Suite 200
Bloomfield Hills, MI 48301
(248) 792-6886
bakkashian@paalawfirm.com
dbone@paalawfirm.com
_____

## COMPLAINT

Plaintiffs John Gburek ("John") and JoAnne Gburek ("JoAnne," collectively "Plaintiffs"), by and through their attorneys, Paesano Akkashian, PC, for their Complaint against Defendant Regal Assets, LLC ("Defendant") state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are individuals who reside in Wayne County, Michigan.

2. Upon information and belief, Defendant is a California limited liability company with a principal place of business located at 280 South Beverly Drive, 5th Floor, Beverly Hills, CA 90212.

3. Upon information and belief, Defendant's sole member, Leah Donoso, is a resident of the State of Texas.

4. This Court has personal jurisdiction over the Defendant pursuant to Michigan's long-arm statute, MCR 600.715, as Defendant conducted business in the State of Michigan and within the Eastern District of Michigan.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the amount of damages at issue exceeds $75,000 and the parties reside in different states.

6. Venue is proper within this Court pursuant to 28 U.S.C. § 1391(b)(3).

## GENERAL ALLEGATIONS

7. Plaintiffs are investors that maintain individual retirement accounts ("IRAs") with Kingdom Trust, an IRA custodian based in Kentucky.

8. Defendant is a company that purports to act as a gold, silver, and other precious metals intermediary that connects investors with precious metal dealers.

9. Defendant regularly advertises on television stations, radio stations, and other media platforms, including the internet and social media, throughout the United States, including in the Eastern District of Michigan.

10. In 2020, Plaintiffs became interested in investing in precious metals, partially because of the volatility experienced at the beginning of the COVID-19 pandemic.

11. John began researching different precious metal dealers and discovered Defendant through those efforts. John spoke with Defendant's representatives in or around April of 2020 to gather more information on Defendant and the purchasing process.

12. In those initial calls, Defendant's representatives outlined the purchasing process with John, indicating that precious metals could be purchased using Plaintiff's IRA assets held at Kingdom Trust.

13. Defendant represented that, when an order for gold or silver was received and funded, it works with its network of suppliers and directs them to transfer the purchased precious metals to Delaware Depository Services Company ("DDSC") in Wilmington, Delaware, where it would be held in an IRA account for the benefit of John or JoAnne.

14. Defendant's agents also reiterated many of its online selling points, that precious metals are excellent, secure, and low-risk investments, and are likely to outperform stocks and other, more traditional investments. Defendant also represented that the investment was secure because Plaintiffs would "own" and "possess" the actual precious metals purchased.

3

15. John was impressed with the presentation and Plaintiffs decided to purchase precious metals through Defendant.

16. On April 13, 2020, John placed his initial order with Defendant, buying 123 one-ounce gold coins for a purchase price of $236,755. The order details were memorialized in an April 13, 2020 invoice from Defendant, billed to Kingdom Trust. (April Invoice, **Exhibit A**).

17. On June 3, 2020, John placed a second order with Defendant, buying 13 ten-ounce gold bars and 9 one-ounce gold bars for a purchase price of $248,991. Defendant again issued an invoice memorializing the transaction. (June Invoice, **Exhibit B**).

18. On October 22, 2020, JoAnne placed an order with Defendant, purchasing 135 one-ounce gold bars and 6 ten-ounce silver bars for a purchase price of $271,410. As before, Defendant issued an invoice memorializing the transaction with JoAnne's IRA account. (October Invoice, **Exhibit C**).

19. In total, Plaintiffs transferred $757,156 to Defendant based on Defendant's representations that it would broker the purchase of gold and silver from its suppliers.

20. Despite accepting Plaintiffs' money, Defendant did not source all of the purchased precious metals to Plaintiffs.

21.     Over the past two years, Plaintiffs, along with representatives of Kingdom Trust, have attempted to gain clarity from Defendant on the status of their investments.

22.     Despite purchasing 123 one-ounce gold coins, 13 ten-ounce gold bars, and 9 one-ounce gold bars purchased by John, Defendant has only provided John with 50 gold coins and 9 one-ounce gold bars.

23.     Defendant has failed to produce the 73 one-ounce gold coins and 13 ten-ounce gold bars purchased by John, valued at approximately $377,790.

24.     Similarly, Defendant has failed to produce the 135 one-ounce gold bars purchased by JoAnne, valued at $246,810.

25.     Plaintiffs and their representatives at Kingdom Trust have attempted to contact Defendant multiple times to locate the missing gold coins and bars.

26.     Defendant's representatives initially assured Plaintiffs that their gold bars were secure, but eventually admitted to their suppliers having "inventory issues." This directly contradicted Defendant's representations during their sales pitch that their suppliers had full inventory and were able to ship as soon as a purchase order was funded.

27.     Defendant's president and owner, Leah Donoso, spoke directly with Plaintiffs and suggested that the precious metals had been sourced and the issue was with the DDSC. Ms. Donoso suggested working with Kingdom Trust to request

DDSC repeat the inventory process to confirm all precious metals purchased by Plaintiffs had been sourced and delivered.

28. After Kingdom Trust and Ms. Donoso approached DDSC, a new inventory review was performed. However, DDSC confirmed its original inventory count, finding that Plaintiffs were missing 73 one-ounce gold coins, 13 ten-ounce gold bars, and 135 one-ounce gold bars. The missing precious metals are valued at approximately $624,600.

29. After the new inventory was completed, Ms. Donoso stopped accepting any calls from Kingdom Trust or Plaintiffs. As of the filing of this Complaint, Plaintiffs and Kingdom Trust have been unable to contact Ms. Donoso to address the missing gold.

30. It is now clear that Defendant's suppliers did not have sufficient inventory to fulfill their orders. Two years later, the suppliers are still unable to produce the remaining gold purchased by Plaintiffs.

31. Defendant refuses to issue a refund to Plaintiffs, despite failing to facilitate the acquisition of the missing gold coins and bars and admitting that Defendant's suppliers do not have sufficient inventory.

32. It is clear now that Defendant was marketing—and continues to market—gold and silver that it has no access to and that its suppliers do not own.

33. In total, Defendant accepted $757,156 in payments from Plaintiffs.

34. At the time Plaintiffs made their payments, or very shortly after, Defendant knew it could not supply $624,600 worth of gold to Plaintiffs.

35. Yet, Defendant refused or failed to issue a refund, and instead delayed and formulated excuses for Defendant's failure to perform.

36. Upon information and belief, Defendant is perpetrating a fraud on the Plaintiffs, and other investors, by accepting payments for precious metals it knows it is unable to source.

37. Defendant's actions are deceptive and intentionally target individuals who are looking to purchase precious metals due to their unease with other investments.

38. Defendant refuses to issue the Plaintiffs a refund and, upon information and belief, has sold the same, non-existent gold to other investors, who may not know their investment dollars are being fraudulently converted by Defendant.

39. In January of 2022, Plaintiffs learned that Kingdom Trust terminated its relationship with Defendant. Alarmingly, representatives from Kingdom Trust informed Plaintiffs that other investors are in the same position as Plaintiffs as it relates to orders placed through Defendant.

40. Plaintiffs bring the present case to recover their investment dollars and stop Defendant from continuing to victimize other investors in Michigan and around the United States.

## COUNT I – BREACH OF CONTRACT

41. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

42. Plaintiffs and Defendant entered into valid and enforceable contracts under which Plaintiffs were purchasing precious metals, including gold and silver, from Defendant, using IRA assets.

43. Plaintiffs performed all of their obligations under their contractual agreement with Defendant by funding the purchase price of three different precious metal orders in April, June, and October of 2020, paying Defendant a total of $757,156.

44. Defendant has breached its contractual obligations to Plaintiffs in numerous ways, including, but not limited to, failing to supply the purchased gold as promised.

45. As a result of Defendant's breach, Plaintiffs have suffered damages in the amount of $624,600.

## COUNT II – INTENTIONAL MISREPRESENTATION

46. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

47. Defendant made material representations and promises to Plaintiffs, including, but not limited to, (1) Defendant's ability to source gold and silver

purchased by Plaintiffs, (2) Defendant's suppliers' inventory was sufficient to satisfy Plaintiffs' orders in April, June, and October of 2020, (3) purchasing gold and silver was low risk, high reward, and incredibly secure as opposed to investing in stocks or bonds, and (4) Plaintiffs would actually own physical gold and silver assets if they were purchased through Defendant.

48. At the time these material representations were made, Defendant knew, or should have known, that the representations were not true, as Defendant's representatives later admitted that Defendant's suppliers were having significant inventory issues and conceded that Defendant was unable to fill orders of previous metals purchased by customers.

49. Defendant made these representations with the intent that Plaintiffs would rely on them and purchase non-existent gold and silver from Defendant.

50. Plaintiffs did, in fact, rely on Defendant's representations, placing orders for gold and silver coins and bars in April, June, and October of 2020.

51. Despite accepting Plaintiff's $757,156, Defendant failed to produce a majority of the gold purchased.

52. As a direct and proximate result of Defendant's material misrepresentations, Plaintiffs have suffered $624,600 in damages.

9

## COUNT III – FRAUDULENT INDUCEMENT

53. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

54. Defendant made material representations and promises to Plaintiffs, including, but not limited to, (1) Defendant's ability to source gold and silver purchased by Plaintiffs, (2) Defendant's suppliers' inventory was sufficient to satisfy Plaintiffs' orders in April, June, and October of 2020, (3) purchasing gold and silver was low risk, high reward, and incredibly secure as opposed to investing in stocks or bonds, and (4) Plaintiffs would actually own physical gold and silver assets if they were purchased through Defendant.

55. Defendant made these representations with the intent of inducing Plaintiffs into contracting with Defendant to purchase precious metals.

56. At the time these material representations were made, Defendant knew, or should have known, that the representations were not true, as Defendant's representatives later admitted that Defendant's suppliers were having significant inventory issues and conceded that Defendant was unable to fill orders of precious metals purchased by customers.

57. Plaintiffs relied on Defendant's material misrepresentations and were induced into purchasing gold and silver through Defendant despite Defendant's inability to source the products being purchased.

58. As a direct and proximate result of Defendant's material misrepresentations, Plaintiffs have suffered $624,600 in damages.

## COUNT IV – SILENT FRAUD

59. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

60. Defendant had a duty or obligation to disclose to Plaintiffs that its suppliers did not have sufficient inventory, and were unable to actively source, the precious metals Plaintiffs sought to purchase from Defendant.

61. Rather than disclosing this information, Defendant improperly suppressed the information.

62. Defendant suppressed its inability to source precious metals with the intent of inducing Plaintiffs into contracting with Defendant to purchase precious metals.

63. During the negotiations between Plaintiffs and Defendant, Defendant knew, or should have known, that it was making material misrepresentations to Plaintiffs regarding its ability to supply or source gold and silver.

64. Ms. Donoso later admitted that Defendant's suppliers were having significant inventory issues and conceded that Defendant was unable to fill orders of precious metals purchased by customers.

65. Had Defendant supplied Plaintiffs with accurate information regarding its lack of supply and inability to source precious metals, Plaintiffs would have not paid Defendant $624,600 for gold and silver the Defendant did not own.

66. Plaintiffs did, in fact rely on Defendant's material omissions, and were induced into purchasing gold and silver from Defendant despite Defendant's inability to source the products being purchased.

67. As a direct and proximate result of Defendant's material misrepresentations, Plaintiffs have suffered $624,600 in damages.

## COUNT V – NEGLIGENT MISREPRESENTATION

68. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

69. Defendant made material representations and promises to Plaintiffs, including, but not limited to, (1) Defendant's ability to supply gold and silver purchased by Plaintiffs, (2) Defendant's supplier's inventory was sufficient to satisfy Plaintiffs' orders in April, June, and October of 2020, (3) purchasing gold and silver was low risk, high reward, and incredibly secure as opposed to investing in stocks or bonds, and (4) Plaintiffs would actually own physical gold and silver assets if they were purchased through Defendant.

70. At the time these material representations were made, Defendant knew, or should have known, that the representations were not true, as Defendant's

representatives later admitted that Defendant's suppliers were having significant inventory issues and conceded that Defendant was unable to fill orders of previous metals purchased by customers.

71. Defendant owed a duty to Plaintiffs to provide accurate information before accepting money from Plaintiffs for gold and silver its suppliers did not own and could not source.

72. Defendant breached its duty of providing accurate information to Plaintiffs.

73. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs have suffered $624,600 in damages.

## COUNT VI – INNOCENT MISREPRESENTATION

74. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

75. Defendant represented to Plaintiffs that (1) Defendant could supply gold and silver purchased by Plaintiffs, (2) Defendant's suppliers' inventory was sufficient to satisfy Plaintiffs' orders in April, June, and October of 2020, (3) purchasing gold and silver was low risk, high reward, and incredibly secure as opposed to investing in stocks or bonds, and (4) Plaintiffs would actually own physical gold and silver assets if they were purchased through Defendant.

76. These representations were false when they were made.

13

77. Plaintiffs relied on the representations, sending Defendant $624,600 in IRA assets to purchase gold and silver.

78. Over a two-year period, Defendant has failed to produce the gold and silver purchased by Plaintiffs and failed to issue a refund.

79. As a direct result of the misrepresentations made by Defendant, Plaintiffs suffered $624,600 in damages.

### COUNT VII – UNJUST ENRICHMENT

80. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

81. Defendant has received a benefit from Plaintiffs in the form of payment for $624,600 in gold coins and bars that were never supplied by Defendant.

82. An inequity has resulted due to Defendant's failure or refusal to issue Plaintiffs a refund for the $624,600 in gold coins and bars that it was unable to produce or source in a timely manner.

83. As a direct result of his inequity retained by Defendant, Plaintiffs suffered $624,600 in damages.

### COUNT VIII – VIOLATION OF MICHIGAN'S CONSUMER PROTECTION ACT

84. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

85. Defendant has implemented and engaged in unfair, deceptive practices including, but not limited to: (1) causing probability of confusion or misunderstanding as to the source of gold and silver purchased by Plaintiffs, (2) representing to Plaintiffs that the gold purchased was supplied, or will be supplied, immediately after Plaintiffs' purchase, when the gold was not supplied and has not been sourced, (3) failing to reveal material facts about its suppliers' inventory shortage, the omission of which misled and deceived Plaintiffs as they could not reasonably know the trust without Defendant's accurate disclosure, and (4) failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner.

86. These actions constitute violations of Michigan's Consumer Protection Act, MCL 445.901 *et seq*.

87. As a result of Defendant's deceptive actions, Plaintiffs suffered $624,600 in damages and are entitled to recovery of the same, along with all costs, reasonable attorney fees, and punitive damages. *See* MCL 445.911(3).

## COUNT IX – INJUNCTIVE RELIEF

88. Plaintiffs incorporate the foregoing allegations as though fully restated herein.

89. Pursuant to Section 11 of the Michigan Consumer Protection Act, a person may seek injunctive relief "in accordance with the principals of equity" to

enjoin a person who "is engaging or is about to engage in a method, act, or practice that is unlawful under [the Act]."

90. Here, Plaintiffs are entitled to injunctive relief barring Defendant from continuing to solicit customers in the State of Michigan.

91. There is significant risk to the public if Defendant continues its deceptive practices.

92. Plaintiffs have lost $624,600 in IRA funds that Defendant promised would be invested in gold and silver. Nearly two years after their purchases, Plaintiffs are without any evidence that Defendant's suppliers have inventory sufficient to fulfill Plaintiffs' orders, and no evidence has been produced that suggests Defendant can source metals sufficient to cover the $624,600 paid to Defendant.

93. Making matters even more concerning, Defendant is a California entity that is currently not in good standing due to, upon information and belief, the owner's failure to file requisite reports with the State of California.

94. Defendant is, essentially, a defunct company soliciting large investments from Michigan residents with no ability to produce the precious metals it promises to deliver.

95. As such, Plaintiffs request the Court enter a preliminary injunction barring Defendant from conducting deceptive trade practices in the State of

Michigan, and after a trial on the merits, convert the preliminary injunction into a permanent injunction.

## REQUESTED RELIEF

Plaintiffs John and JoAnne Gburek respectfully request this Honorable Court enter judgment in favor of Plaintiffs, and against Defendant, and award the following relief:

a. Damages in the amount of 624,600, plus all costs, attorney fees, and other damages including special damages, exemplary damages, and punitive damages;
b. Injunctive relief against Defendant pursuant to the Michigan Consumer Protection Act barring Defendant from conducting continued misleading, deceptive trade practices; and
c. Any other relief the Court deems equitable and just.

Dated: September 19, 2022

Respectfully Submitted,

PAESANO AKKASHIAN, PC

By: */s/ Devin W. Bone*
    Brian M. Akkashian (P55544)
    Devin W. Bone (P78853)
7457 Franklin Road, Suite 200
Bloomfield Hills, MI 48301
(248) 792-6886
bakkashian@paalawfirm.com
dbone@paalawfirm.com

*Attorneys for Plaintiffs*